**Dorothy Jean ATKINS, et al.**

v.

**GENERAL MOTORS CORPORATION.**

Civ. A. No. 77–0160.

United States District Court,
W. D. Louisiana,
Monroe Division.

Jan. 28, 1981.

Opinion After Trial April 30, 1981.

James E. Youngdahl, Little Rock, Ark., Mary E. Howell and Stanley A. Halpin, New Orleans, La., Richard Quiggle, Little Rock, Ark., for plaintiffs.

A. Richard Gear, Monroe, La., Frazer F. Hilder, Gen. Counsel, Detroit, Mich., for defendant.

## RULING

NAUMAN S. SCOTT, Chief Judge.

Defendant, General Motors, has filed a motion for involuntary dismissal, as provided in F.R.C.P. 41(b), of plaintiffs' suit alleging that defendant violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* Plaintiffs' case came on for trial September 11, 1980.[1] Generally, plaintiffs assert that except for classroom time, their participation in training programs for positions at defendant's Monroe, Louisiana headlamps manufacturing plant, constituted work beneficial to defendant and thus compensable under FLSA. We recognize two subgroups of plaintiffs: Ouachita Vocational Technical Institute (OVTI)-trainees, those trained full time under state auspices; and GM-trainees, those who worked at General Motors and were trained after or before their regular shifts by defendant in the hopes of gaining skills to qualify for promotions at the plant.

## OVTI–TRAINEES

The issue concerning OVTI-trainees is whether or not they are "employees" under FLSA. We are guided by six criteria cited in "Field Operations Handbook of the Wage and Hour Division of the Department of Labor", § 101b(11) and the Wage and Hour Administrator's Opinion, WH–229; Wage and Hour Manual 91:451 (1973). These persuasive authorities were developed from the Supreme Court opinions of *Walling v. Port-*

---

1. Five plaintiffs, unavailable at that time, were given until November 24, 1980 to present evidence of their claims to this court. Inadvertently, those plaintiffs failed to submit such evidence by that date. Since, as plaintiffs' counsel recognizes, these five fall within a subgroup of plaintiffs whose claims as a legal matter we dismiss today, the issue of admitting their testimony after the deadline is now moot.

*land Terminal Co.*, 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947); *Walling v. Nashville, Chattanooga & St. Louis Ry.*, 330 U.S. 158, 67 S.Ct. 644, 91 L.Ed. 816 (1947) and their progeny. *See Isaacson v. Penn Community Services, Inc.*, 450 F.2d 1306 (4th Cir., 1971); *Wirtz v. Wardlaw*, 339 F.2d 785 (4th Cir., 1964). The six criteria, the absence of any *one* of which signals "employee" status, are as follows:

"(1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;

(2) the training is for the benefit of the trainees or students;

(3) the trainees or students do not displace regular employees, for work under their close observation;

(4) the employer that provides the training derives no immediate advantage from the activities of the trainees or students, and on occasion his operations may actually be impeded;

(5) the trainees or students are not necessarily entitled to a job at the conclusion of the training period; and

(6) the employer and the trainees or students understand that the trainees or students are not entitled to wages for the time spent in training."

■ It is clear from the evidence adduced at trial that criteria 1, 2, 5 and 6 have been met. However, with regard to criteria 3 and 4, we find that the OVTI-trainees have come forward with sufficient evidence to warrant rebuttal by defendant. Specifically, the activities which may have benefited the defendant and which, were it not for these plaintiffs, the defendant may have had to hire others, include work relative to the setting up ("debugging") of actual production lines at the plant and the cleaning up of dust and debris generated by fabrication of the plant itself.[2]

Defendant argues that even if plaintiffs are found to be "employees" under FLSA, they must overcome two further legal hurdles. Firstly, plaintiffs must show that the hours in contention constitute "work time". "Work time" as it relates to training programs under FLSA, has been clarified by the Department of Labor's four point test. "Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:

(a) Attendance is outside of the employee's regular working hours;

(b) attendance is in fact voluntary;

(c) the course, lecture, or meeting is not directly related to the employee's job; and

(d) the employee does not perform any productive work during such attendance."[3]

■ Secondly, according to the defendant, even if plaintiffs prove "work time" they are barred by the Portal-to-Portal Act[4] as interpreted by the Department of Labor.[5] The Portal Act, when read in *pari materia* with the relevant regulations, bars wage claims arising from "work time" activities "preliminary or postliminary" to regular work hours, where such activities are not related to a claimant's "principal work activities". Under defendant's theory, activities engaged in *several weeks* prior to undisputed work time could be construed as "preliminary." We view the legal guidelines as requiring that the relationship between undisputed and disputed worktime resemble the relationship that an 8 hour shift and a 4 hour overtime period share. To say that "preliminary or postliminary" applies to disputed worktime divorced from undisputed worktime by even the length of

---

**2.** Cleanup of machines already operative and debris generated by the trainees is specifically excluded. We find this cleanup activity to be a necessary adjunct to the training program.

**3.** "What are Hours of Work", Administrator's Interpretation, as amended, part 785.27 (1970), *Wage and Hour Manual*, 93:107.

**4.** 29 U.S.C. § 254(a)(2), hereinafter referred to as the Portal Act.

**5.** See Administrator's Bulletin 790.1 et seq., *Wage and Hour Manual*, 90:731, et seq., as revised (1970); See also Official Interpretation, *Wage and Hour Manual*, 90:652.

a work shift, renders these guidelines illogical. The two periods of activity must occur concurrently within the same 24 hour period before the regulations or Portal Act bars even can be asserted.

## GM–TRAINEES

The legal arguments regarding GM-trainees' wage claims is the same twofold position asserted above. To reiterate, was the training, excepting classroom time, "work time"? If so, are the claims barred nonetheless by the Portal Act?

■ Testimony reveals that to a lesser extent than the OVTI-trainees, some GM-trainees may have performed activities we recognized above as potentially beneficial to the defendant. The GM-trainees, then, have shown that "some productive work" resulted from non-class training.[6] Unlike the attempt to apply these arguments against the OVTI-trainees, the Portal Act, as interpreted by the Department of Labor, does bar wage claims by GM-trainees. The training time for the GM-trainees was truly "preliminary or postliminary" to regular working hours. Further, these plaintiffs sought better positions requiring the acquisition of skills unrelated to those they then undertook as employees.[7]

For the foregoing reasons, defendant's motion for involuntary dismissal, insofar as it relates to those plaintiffs in the GM-trainee group, is hereby GRANTED. Defendant should submit a judgment consistent with this ruling within ten days of date.

6. See four point criteria enumerated supra.

7. "Where a training course is instituted for the bona fide purpose of preparing for advancement through upgrading the employee to a higher skill, and is not intended to make the employee more efficient in his present job, the training is not considered directly related to the employee's job even though the course incidently improves his skill in doing his regular work." Administrator's Interpretation, supra, Part 785.29, *Wage and Hour Manual,* 93:107.

1. Excluding classroom time.

2. Entry of judgment in that matter was reserved until entry of judgment in the instant opinion to avoid possible bifurcation of any appeal in this case.

## OPINION AFTER TRIAL

Plaintiffs, originally 63 in number, brought suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.,* as amended, against defendant, General Motors Corporation, to recover minimum wages they felt were owed to them for activities performed during their training[1] at defendant's headlamps manufacturing plant in Monroe, Louisiana. Plaintiffs' case was concluded on September 11, 1980. Thereafter, defendant moved for involuntary dismissal pursuant to F.R.C.P. 41(b), of all but three plaintiffs' claims. We granted said motion in part on January 28, 1981.[2] Defendant presented its case on January 29, 1981. Jurisdiction exists under 28 U.S.C. § 1337 and 29 U.S.C. § 216.

In our ruling of January 28, 1981 we recognized two sub-groups of plaintiffs: Ouachita Valley Technical Institute (OVTI)-Trainees, those trained full-time under state auspices; and GM-Trainees, those who worked at General Motors and were trained after or before their regular shifts by defendant in the hopes of gaining skills to qualify for promotions at the plant.

Except for the three claims General Motors acknowledged and did not seek to dismiss, the GM-Trainees were dismissed in our prior ruling. First determining that this sub-group met "employee" status under FLSA, we then addressed two legal issues:

1. Whether any of the hours in training constituted "work time"[3] and if so

3. Criteria signaling "work-time" relative to training programs under FLSA have been promulgated by the Department of Labor in "What are Hours of Work", Administrator's Interpretation, as amended, Part 785.27 (1970), *Wage and Hour Manual,* 93:107:

"Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:
(a) Attendance is outside of the employee's regular working hours;
(b) attendance is in fact voluntary;
(c) the course, lecture, or meeting is not directly related to the employee's job; and
(d) the employee does not perform any productive work during such attendance."

2. Whether, under the Portal-to-Portal Act[4] the "work-time" activities were "preliminary or postliminary" to the plaintiffs' "principal work activities", and unrelated to those activities such as to bar the claims. We answered both questions in the affirmative.[5]

Regarding the OVTI-Trainees we found that they had come forward with evidence to support "employee" status under the Department of Labor Guidelines, which are based upon two companion Supreme Court opinions. *Walling v. Portland Terminal Co.*, 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947); *Walling v. Nashville, Chattanooga & St. Louis Ry.*, 330 U.S. 158, 67 S.Ct. 644, 91 L.Ed. 816 (1947). *See Isaacson v. Pennsylvania Community Services, Inc.*, 450 F.2d 1306 (4th Cir., 1971), and *Wirtz v. Wardlaw*, 339 F.2d 785 (4th Cir., 1964).

The Department of Labor's "Field Operations Handbook" Section 101B(11) lists six criteria, the absence of any one of which signals employee status. See also Wage and Hour Administrator's Opinion, WH–229; *Wage and Hour Manual* 91:451 (1973). OVTI-Trainee plaintiffs established a prima facie case indicating that the following two criteria may have been absent from a description of their training program:

"Trainees or students do not displace regular employees, for work under their close observation;" and "The employer that provides the training derives no immediate advantage from the activities of the trainees or students, and on occasion his operations may actually be impeded."

In our ruling on this point we said "Specifically, the activities which may have benefited the defendant and which, were it not for these plaintiffs, the defendant may have had to hire others, include work relative to the setting up ('debugging') of actual production lines at the plant and the cleaning up of dust and debris generated by fabrication of the plant itself." *Atkins, et al. v. General Motors Corp.*, No. 77–0160–M (W.D.La., Jan. 28, 1981) (ruling granting partial involuntary dismissal) at 309. We excluded the cleanup of machines already operative and debris generated by the trainees since such activity is obviously part of any bona fide training process. We now consider whether General Motors has rebutted plaintiffs' prima facie showing of "employee" status in light of the other above described training activities.

■ It is clear to us that the debugging of machinery by plaintiffs, although involving extensive cleaning and preparation of production lines, was a valid training experience for the trainees. During production machines must be adjusted, greased and cleaned of glass and other debris. This supervised activity familiarized the trainees with the numerous mechanical phases of production and the proper maintenance thereof. Defendant already had within its ranks enough experienced personnel to perform these jobs.[6] No immediate advantage for General Motors can be attributed to the debugging by the trainees.[7]

There was no other immediate advantage to General Motors resulting from the manner in which it trained the various classes of OVTI-Trainee plaintiffs. Evidence adduced at trial reveals that plaintiffs did not produce any appreciable quantity of saleable headlamps. The running of some products through the line is undeniably essential to the training program. Therefore, the fact that it took place, without more, does

---

**4.** 29 U.S.C. § 254(a)(2), hereinafter referred to as Portal Act; see Administrator's Bulletin, § 790.1 *et seq., Wage and Hour Manual*, 90:731, *et seq.*, as revised (1970); see also Official Interpretation, *Wage and Hour Manual*, 90:652.

**5.** We found, however, that the Portal Act would not bar the OVTI-Trainees' claims, should they conclusively prove their employee status. Their work was not "preliminary or postliminary" to any "work-time" under the plain meaning of the Act.

**6.** Even if it did not, the nature of the debugging activities was unquestionably tailor-made to the training process.

**7.** Comparisons of total debug time between training and non-training lines indicate that training lines were readied for production at a faster rate than the other lines. We are not persuaded, however, that this indicates any immediate advantage to General Motors overall.

not prove these trainees are entitled to compensation.

We recognize an isolated instance where cleaning was not directly related to the training and where trainees were utilized in the uncrating of one piece of machinery. We find that these claims are deminimis in nature and quote from the Supreme Court's view on employer-employer relationships under FLSA:

"We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."

*Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1476, 91 L.Ed. 1772 (1947); *The Bailey v. Pilots' Assn. for the Bay & River Delaware*, 406 F.Supp. 1302, 1307 (E.D.Pa.1976).

All costs incurred by defendant are taxed to plaintiff. Defendant should submit a judgment consistent with this opinion within ten days of date.