**Dorothy Jean ATKINS, et al.,
Plaintiffs-Appellants,**

v.

**GENERAL MOTORS CORPORATION,
Defendant-Appellee.**

**No. 81–3729.**

United States Court of Appeals,
Fifth Circuit.

April 7, 1983.

---

James E. Youngdahl, Lynn-Marie Crider, Richard Quiggle, Little Rock, Ark., for plaintiffs-appellants.

Hudson, Potts & Bernstein, A. Richard Gear, Jesse D. McDonald, Monroe, La., for defendant-appellee.

Before REAVLEY and TATE, Circuit Judges, and MITCHELL *, District Judge.

REAVLEY, Circuit Judge:

Appellants assert claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("F.L.S.A."). The district court granted an involuntary dismissal as to one group of plaintiffs and then, after a full trial on the merits, ruled for defendants. 524 F.Supp. 307 (W.D.La.1981). All plaintiffs appeal; we affirm except as to the involuntary dismissal.

### The Facts

In 1973 when General Motors became interested in relocating its headlight plant,

---

* District Judge of the Eastern District of Louisi-    ana, sitting by designation.

Louisiana pursued and ultimately persuaded G.M. to locate the plant in Monroe, Louisiana. As part of the inducements Louisiana promised to G.M., the state agreed to provide a trained labor pool. In order to satisfy this obligation, the state set up training classes at the Ouachita Valley Training Institute ("O.V.T.I."). Six classes in all were conducted under O.V.T.I. auspices. G.M. designed the course of study, provided equipment and some instructors. The classes were taught at two locations. Initially, a rented barn was used, and the trainees learned there on obsolete equipment. When the G.M. plant was in a sufficient state of completion, it was utilized in order to give the students an opportunity to learn on the equipment they would actually use if they were employed.

These classes typically consisted of some classroom training followed by actual hands-on training. The trainees were to become machine attendants, which required that they be familiar with and be able to make a variety of repairs upon the machines. The students therefore were required to assemble and reassemble equipment, and to clean the equipment and the area around it. Because there were a number of different machines on a production line, the students would work on one machine until they reached a certain level of proficiency, and then rotate to another part of the production line. All the O.V.T.I. trainees understood that they were: (1) not going to be paid for the class, and (2) were not guaranteed a job.

Because of a need to obtain more skilled labor, G.M. decided to offer similar classes to its employees. Notices were posted, and the classes were held either before or after the employees' regular shifts. G.M. conducted five of these classes along the same lines as the O.V.T.I. classes. The G.M. employees understood that they were not to be paid for their participation.

The plaintiffs then brought this suit, alleging that they were entitled to back pay for the classes, relying mainly on evidence that they cleaned the machines and that their assembly and repair of the machines helped "debug"[1] the production lines on which they trained.

The district court divided the case into two classes of plaintiffs, the G.M. trainees and the O.V.T.I. trainees. As to the G.M. trainees, the court granted defendant's motion for involuntary dismissal at the close of the plaintiffs' case. As to the O.V.T.I. trainees, the district court denied the motion and a full trial on the merits was had.

### O.V.T.I. Trainees

The principal legal hurdle for the O.V.T.I. group to surmount is whether they were employees of G.M. The F.L.S.A. defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To employ is defined as including "to suffer or permit to work." *Id.* at § 203(g). In applying this rather broad definition, the Wage and Hour Administrator has formulated certain criteria for determining if trainees are employees. These criteria are

(1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;

(2) the training is for the benefit of the trainees;

(3) the trainees do not displace regular employees, but work under close observation;

(4) the employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded;

(5) the trainees are not necessarily entitled to a job at the completion of the training period; and

(6) the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

1. "Debugging" involves repeated fine tuning of the line in order to bring the line up to satisfactory production levels.

Wage & Hour Manual (BNA) 91:416 (1975). We recently cited these criteria with approval in *Donovan v. American Airlines, Inc.*, 686 F.2d 267 (5th Cir.1982), and the Administrator's interpretation is entitled to substantial deference by this court. *Manhart v. City of Los Angeles, Dept. of Water,* 553 F.2d 581, 590 (9th Cir.1976). ("As the official charged with enforcing and interpreting the Equal Pay Act, his [the Administrator's] interpretations of that Act are entitled to great deference"). *But see Brennan v. General Telephone Co. of Florida,* 488 F.2d 157 (5th Cir.1973) (administrator's interpretation of the Consumer Credit Production Act entitled only to some deference).

This appeal turns on the fourth criterion, that the employer derive no immediate advantage from the trainees' activities.[2] Appellants' argument rests on two grounds. They first argue that the district court found as a fact that the trainees performed work that derived to G.M.'s advantage. Appellants then contend that the district court misapplied the law because of an erroneous belief that a valid training program could not involve compensable work.

We reject this interpretation of the district court's opinion. The trial was of an unusual nature in that the presentation of plaintiffs' and defendant's evidence was bifurcated by a period of some four months. It appears that at the close of the plaintiffs' case, on September 11, 1980 certain depositions had yet to be filed. The court agreed to postpone the defendant's case until January 29, 1981. In the interim, the defendant made a motion for involuntary dismissal as to all plaintiffs. The district court granted this motion as to the G.M. trainees, but denied the motion as to the O.V.T.I. trainees. The court found that the O.V.T.I. plaintiffs had come forward with sufficient evidence of productive work in: (1) debugging production lines and (2) cleaning up dirt generated by the construction of the plant.

■ In its written opinion after hearing the defendant's case, the court referred extensively to its involuntary dismissal opinion. The court, after discussing the dismissal opinion, addressed itself to

> whether General Motors has rebutted plaintiffs' prima facie showing of "employee" status in light of the other above described training activities.

*Atkins,* 524 F.Supp. at 311. It is clear that the district court had not made a fact finding that the employees had performed productive work. In fact, the district court went on to find just the opposite, that the plaintiffs had performed no work which derived to G.M.'s immediate advantage. We cannot say that this finding was clearly erroneous.

With regard to the debugging activities, the court noted that this was an integral part of the training experience. The court also noted that G.M. had employees on hand to perform this function. In addition, the record contains testimony that the trainees' damaged or incorrectly repaired equipment.[3]

■ The second activity which the district court cited as supporting the plaintiffs'

2. Appellant argues that the issue here is whether any productive work was performed. He derives this test from 29 C.F.R. § 785.27. While the difference between these tests may be only semantic, it is clear that this test does not apply since the regulation applies to trainees who are already employees. Since employment is the question we must decide, this test is inapposite.

3. Appellant points to evidence in the record that the debugging process was shorter on the production lines that the trainees worked on. The district court rejected this testimony, saying that this did not indicate that G.M. overall derived any immediate advantage. In light of

the fact that G.M. testified that it assigned a full complement of "debuggers," that the trainees damaged the equipment and that G.M. intensified its debugging efforts on these lines, we think the district court was justified in not crediting this testimony.

Another factor supporting the district court was the rotating nature of the classes. Each class would divide into groups, each group working on a specific machine and then rotating. Thus, this debugging work supposedly deriving to G.M.'s benefit would promptly be undone by the next group rotating to a particular machine.

prima facie case was the trainees' cleaning up of dirt caused by the construction of the plant. The district court made no specific reference to this in its final opinion, except to state: "We recognize *an* isolated instance when cleaning was not directly related to the training..." *Id.* at 312. Thus, the district court impliedly found that the plaintiffs did not clean up generally around the plant. This finding is amply supported by testimony that the trainees were only supposed to clean up after themselves and that this was all they did.

■ The district court did, however, find two instances of work which might have derived to G.M.'s benefit, namely "an isolated instance where cleaning was not directly related to the training and where trainees were utilized in the uncrating of one piece of machinery." *Id.* at 312. The district court held that these activities were *de minimis.* We have recognized certain cases in which the compensable work was so minimal in time that a *de minimis* exception exists. *Dunlop v. City Electric, Inc.,* 527 F.2d 394, 401 (5th Cir.1976). We agree with the district court that two isolated instances, over a six to eight week training period fall within this exception.

### The G.M. Trainees

The district court granted the defendant's motion for involuntary dismissal as to the G.M. trainees. He based this ruling on the Portal-to-Portal Act, 29 U.S.C. § 254. The Act states:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, ... on account of the failure of such employer to pay an employee minimum wages, ... for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

The district court held that the "[t]raining time for the G.M.-trainees was truly 'preliminary or postliminary' to *regular working hours."* *Atkins,* 524 F.Supp. at 310 (emphasis ours).

■ We think that this conclusion was, as a matter of law, erroneous. An examination of the statute and its application leads us to the conclusion that *this* training class, even if conducted prior to or after an employee's regular shift is not covered by the Act.

■ The statute itself states that the activity (preliminary or postliminary) is preliminary or postliminary "*to* said principal activity." (Emphasis added). We read this to require more relationship between the two activities than that of time. A training class teaching an employee new skills is not preliminary to his regular eight hour shift using his present skills.[4]

The Administrator's interpretation of these terms also indicates that there must be some nexus between the preliminary/postliminary activity and the principal activity. In 29 C.F.R. § 790.7 the regulations set out examples of preliminary/postliminary activities. Paragraph (g) states:

> Other types of activities which may be performed outside the workday and, when performed under the conditions

---

4. Some legislative history of the Act tends to support our interpretation. In discussion of the Act on the floor of the Senate, Senator Cooper mentioned a lathe worker who sharpened his tools prior to work and a garment worker who prior to work distributed clothing.

*Quoted in Steiner v. Mitchell,* 350 U.S. 247, 256–58, 76 S.Ct. 330, 335–336, 100 L.Ed. 267 (1956). These preliminary activities clearly have some connection with the employee's principal activities.

normally present, would be considered "preliminary" or "postliminary" activities, include checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks.

*Id.* These examples obviously are of a different nature from the training classes involved here that have no connection to the employees' regular jobs.

The case law applying the Act is quite sparse. The Supreme Court in the companion cases of *Steiner v. Mitchell*, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956), and *Mitchell v. King Packing Co.*, 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956) decided that the term "principal activity or activities" included "activities which are 'an integral and indispensable part' of the principal activities." *Steiner*, 350 U.S. at 253, 76 S.Ct. at 334. While the Court therefore did not define what constitutes preliminary or postliminary activities, we do not think that it intended to negate the nexus between the principal activity and the preliminary or postliminary activity.

The First Circuit applied the Act to classroom time in *Ballou v. General Electric Co.*, 433 F.2d 109 (1st Cir.1970). The court held that class time required by G.E., outside the employees' 40-hour work week was preliminary or postliminary to their regular activity. There was some connection between the preliminary activity and the principal activity because in that case the employee's principal activity was "work training." 433 F.2d at 110.

■ While study to perform a job may be preliminary or postliminary to that activity, study unrelated to the employee's present job is *not* preliminary or postliminary to that activity. The Portal-to-Portal Act does not apply, and the time may or may not be compensable. We think that any other interpretation would lead to exclusions under the Act that Congress never intended. For example, in this case, the plaintiffs allegedly performed janitorial services which had no relation to their regular duties. Under the district court's interpretation, these activities would still be "preliminary or postliminary to regular working hours" and therefore not compensable. We therefore hold that the district court erred in applying the Portal-to-Portal Act to this case.

■ Since the district court granted the involuntary dismissal on the Portal-to-Portal Act issue, we must remand this case for further proceedings. The district court, in granting the motion specifically found that "[t]he GM trainees, then, have shown that 'some productive work' resulted from the non-class training." *Atkins*, 524 F.Supp. at 310. Since G.M. has not had the opportunity to introduce evidence specifically rebutting the G.M. trainees' claims, nor have the G.M. trainees been able to introduce any rebuttal evidence, we vacate the involuntary dismissal order and remand for further proceedings.[5]

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

---

5. Appellant also asserts that the district court erred in not allowing certain plaintiffs to intervene. The district court denied the motion on the ground that their claims were barred by the statute of limitations. 29 U.S.C. § 256. This conclusion was correct. This suit was not filed as a class action. Thus, § 256 specifies that limitations runs from the date the complaint is filed. Appellant's argument that this suit is in the nature of a class action provides him no solace since § 256 also requires class plaintiffs to opt in, and limitations runs from the opt-in date. We cannot alter the express terms of the statute. *See Groshek v. Babcock and Wilcox Tubular Products Div.*, 425 F.Supp. 232 (E.D. Wisc.1977) (class action rule for tolling contained in 29 U.S.C. § 256 controls over Fed.R. Civ.P. 23 rule regarding the tolling of limitations).