Wendell BANKS, David Berberet, Jim Cordery, Carl Crawford, Robert Davidsmeyer, Don Edwards, Matt Fricke, Noll Handlin, Jeff Leininger, David Urbas, Tom Whitlock, Matt Madonia, William Anders, Don Anderson, Brian Hayes, Walter Meek, Barry T. Ritter, Scott Rosenberger, John Michael Doyle, Jr., Terrance V. Schou, Kerry L. Miller, Michael J. Nevill, Jr., Frank Jeffrey Rotherham, Kenneth D. Winslow, and Ernest A. Lintner, Plaintiffs,

v.

CITY OF SPRINGFIELD, Defendant.

No. 96–3016.

United States District Court,
C.D. Illinois,
Springfield Division.

March 28, 1997.

Donald M. Craven, Springfield, IL, for plaintiffs.

Thomas H. Wilson, William S. Hanley, John A. Kauerauf, Kevin J. Hubbart, Janis Evelyn Von Qualen, Springfield, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge.

Should police cadets be compensated for the time they spend sleeping?

Of course not!

### I. BACKGROUND

Plaintiffs bring this case pursuant to the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201 *et seq.* In their Amended Complaint, they advance two claims. First, they claim that all of the hours spent while attending the police academy during their ten week basic law enforcement course should be considered as compensable hours of work under the FLSA, *i.e.* 24 hours per day from check-in on Sunday evening through release time on Friday afternoon. Second, they claim that Defendant violated the FLSA: (a) by forcing them to accept compensatory time ("comp time") off of work in lieu of cash overtime payments and (b) by failing to credit them in the appropriate amount for compensatory time earned during the law enforcement course and on a timely basis.

Although, generally, these issues would require a jury to make factual determinations, because the parties have filed cross motions for summary judgment and have generated a record of uncontroverted facts, this matter is appropriate for summary judgment. *Bare-*

*field v. Village of Winnetka,* 81 F.3d 704, 710 (7th Cir.1996).

The City of Springfield ("City") hired Plaintiffs to be city police officers. According to Illinois state law, new police recruits are required to attend a ten week basic law enforcement training course before being awarded an appointment as a law enforcement officer. *See* 50 ILCS § 705/1 *et. seq.* Twenty-three Plaintiffs attended the training course held at Lincoln Land Community College in Springfield, Illinois. The remaining two Plaintiffs attended the training course held at the Illinois State Police Academy. However, for purposes of the case at bar, there is little distinction between the two programs.[1] While at the academy, the City paid for Plaintiffs' tuition, room, and board. The City paid for Plaintiffs' room and board, in part, because the City had elected to send its cadets to Lincoln Land Community College's residential, rather than its commuter, program.[2] As its name indicates, the residential program requires the cadets to stay in provided housing.

Generally, Plaintiffs would report to the apartment complex provided for them late Sunday evening (around 7:00 p.m.). The training week would end at around 4:00 p.m. on Friday, at which time Plaintiffs were free to return home. Plaintiffs repeated this routine until the end of the ten week training program was completed.

Not all Plaintiffs attended the same training course. Anders, Anderson, Hayes, Meek, and Nevill attended course number 93–16 from January 10, 1993 to March 19, 1993. Schou attended course number 93–18 from July 11, 1993 to September 17, 1993. Ritter, Rosenberger, and Rotherham attended course number 94–21 from April 10, 1994 to June 17, 1994. Banks, Berberet, Cordery, Crawford, Davidsmeyer, Edwards, Fricke, Handlin, Leininger, Madonia, Urbas, and Whitlock attended course number 94–23 from October 9, 1994 to December 17, 1994. Lintner and Winslow attended course number 95–24 from January 8, 1995 to March 17, 1995. Finally, Doyle and Miller attended class number 400–52 at the Illinois State Police Academy from March 12, 1995 to May 19, 1995.

While attending the law enforcement training course, Plaintiffs received a paycheck representing payment for 42.5 hours per week which is a regular work week for a Springfield Police Officer. Plaintiffs at the Lincoln Land program completed weekly time sheets which recorded the number of hours that they attended classes or participated in training activities. In completing their time sheets, Plaintiffs credited themselves with a full hour of class or training time for each hour or portion thereof which they spent in class or training activities irrespective of whether the class or training session actually lasted a full hour. All time spent in class or in training was recorded on Plaintiffs' time sheets. On Friday before they were released for the weekend, Plaintiffs gave their time sheets to an advisor at the academy. The advisors and class coordinators then reviewed the time sheets for accuracy.

Finally, the advisors forwarded the time sheets to the City's police payroll department which used the time sheets to calculate the amount of overtime hours worked by Plaintiffs while at the academy. The two Plaintiffs who attended the Illinois State Police Academy did not keep weekly time sheets. Rather, absences were tracked by advisors through memorandums requesting time off.

Upon each class' completion of the training period, the City's payroll department calculated the number of overtime hours earned by each of the Plaintiffs based upon the time sheets and the Illinois State Police Academy's class schedule along with any written explanation which accompanied it. Accordingly, the method used by the City for compensating Plaintiffs resulted in additional hours above class and training time being considered by the City as being compensable.

In determining the number of comp time hours to be credited to each Plaintiff, the

---

**1.** Hereafter, when the Court refers to the academy or police academy, the Court will be referring to both programs unless otherwise stated.

**2.** The Illinois State Police academy has only a residential program.

City considered the hours which were in excess of 171 hours within each applicable 28 day FLSA period and would multiply that number by 1.5. Those hours were then "deposited" in Plaintiffs' respective "comp bank" to be used after the training period had concluded.

Each training class received a slightly different hourly rate of pay. Obviously, the applicable 28 day FLSA time period for calculating overtime compensation was also different from class to class. Appendix A sets forth the breakdown of the applicable 28 day time period for calculating overtime compensation pursuant to the FLSA for each class. Appendix B sets forth the calculations of wages and "comp time" earned by each Plaintiff while attending the academy.

The police academy did not operate as a typical college or school. Plaintiffs were subject to certain restrictions, not the least of which was the requirement that they live in the housing provided. Moreover, Plaintiffs were subject to the applicable rules of conduct established by the academy. If Plaintiffs violated any rule, they were subject to discipline which usually consisted of writing a memorandum. Plaintiffs' apartments were to be kept neat and clean, and the apartments were subject to random inspections. Furthermore, Plaintiffs were given a curfew and were told that there would be bed checks. Visitors were not allowed in the apartments except by a grant of "liberty."

Finally, Plaintiffs were not allowed to stop at a restaurant or order a pizza after supper except by a grant of "liberty." Liberties were awarded to the class as a whole, rather than to individuals. The advisors awarded liberties based upon how the class was performing academically, as a unit, and in training. It was within the sole discretion of the advisors whether or not the class would be awarded a liberty.

However, Plaintiffs did have time to engage in personal pursuits. Plaintiffs were permitted to bring televisions, radios, computers, books, sports equipment, and other personal possessions with them to their apartments. Upon returning to their apartments after supper, Plaintiffs were free to sleep, study, place personal phone calls, jog, watch television, or engage in any other personal endeavor. While it is true that liberties had to be earned as a class, generally, after the first week of training, Plaintiffs were free to stop at a restaurant or order a pizza. As the training progressed, Plaintiffs were free to leave their apartments at night to go to a movie, a bar, home, or shopping as long as they returned by curfew. Finally, although Plaintiffs were subject to bed checks and room inspections, advisors seldom, if ever, conducted any.

It is upon this factual backdrop that the parties have filed their cross motions for summary judgment.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

## III. ANALYSIS

The Fair Labor Standards Act essentially requires employers to pay their employees at a rate not less that one and one-half times the regular rate at which the employee is employed for all hours worked in excess of 40 hours per work week. 29 U.S.C. § 207(a). However, public agencies engaged in fire protection or law enforcement activities are not deemed to have violated the FLSA if in a work period of at least 7 but less than 28 days, the employee receives tours of duty which in the aggregate do not exceed 171 hours. 29 U.S.C. § 207(k); 29 C.F.R. § 553.230. Finally, the FLSA gives an employee a cause of action against his employer if his employer does not comply with the requirements of the act. 29 U.S.C. § 216(b).

In the instant case, the City has chosen to calculate overtime payments for its law enforcement officers on a 28 day FLSA time period.[3] Both parties recognize that this case hinges upon the Court's interpretation of the U.S. Department of Labor's ("Department") regulation which states:

> Police officers or firefighters, who are in attendance at a police or fire academy or other training facility, are not considered to be on duty during those times when they are not in class or at a training session, if they are free to use such time for personal pursuits. Such free time is not compensable.

29 C.F.R. § 553.226(c).

Accordingly, if Plaintiffs were not free to use the time which they were not in class or not in training for personal pursuits, then, arguably, every minute from the time when Plaintiffs signed into the academy on Sunday evening until the time when they were released on Friday afternoon should be compensable. However, if Plaintiffs could use non-class and non-training time for personal pursuits, then that time is not compensable. For the reasons set forth below, the Court finds that said time is not compensable.

### A. *Whether Plaintiffs' non-class and non-training time is compensable*

■ Like the parties, the Court has been unable to find a case from any court which has previously addressed the issues at bar. As Plaintiffs correctly point out, while the earlier Department regulations specifically exempted the time spent in barracks by cadets, the current regulation (*i.e.* 29 C.F.R. § 553.226(c)) contains no such language. However, based upon the lack of case law and lack of administrative rulings, the Court finds that the regulation's historical development is both educational and instructive in the instant case.

While Congress enacted the FLSA for the welfare of employees, it is doubtful that either Congress or the Department of Labor envisioned the type of compensation claimed by Plaintiffs. The 1986 edition of the Department's regulations contained the following provisions regarding compensable time for employees attending training facilities:

> Only the time spent in actual training or retraining constitutes compensable hours of work. All other time, such as that spent in studying and other personal pursuits, is not compensable hours of work *even in situations where the employee is confined to campus or barracks 24 hours a day.* See § 553.14.

29 C.F.R. § 553.7 (7–1–86 Edition)(emphasis added). The regulations went on to say:

> Compensable hours of work generally include all of that time during which an employee is on duty or on the employer's premises or at a prescribed workplace, as well as all other times during which the employee is suffered or permitted to work for the employer.... *On the other hand, employees who are confined to barracks while attending police academies are not on duty during those times when they are not in class or at a training session since they are free to use such time for personal pursuits.*

29 C.F.R. § 553.14 (7–1–86 Edition)(emphasis added).

Although the current regulation does not contain this explicit language, there is no indication that when the Department implemented 29 C.F.R. § 553.226(c), it intended to change its views regarding the non-compens-

---

**3.** The relevant 28 day FLSA time period for each Plaintiff is set forth in Appendix A.

ability of the time spent by police cadets in their barracks. To the contrary, "Section 553.226(c) incorporates into the regulations long-standing interpretations concerning time spent in attendance at specialized or follow-up training which is required by law for certification of employees." Proposed Rules, 51 Fed.Reg. 13413, 13415 (1986).

One of the Department's long-standing interpretations can be found in opinion letter 1643 issued by the Wage–Hour Administrator ("Administrator")on March 25, 1986.[4] Therein, the Administrator was asked "how to compensate police officers who have been recently hired and who are attending the police academy." The facts contained within the letter are strikingly similar to those in the case at bar. There, trainee police officers lived at the police academy's facilities and attended classes Monday through Saturday for 16 weeks. During that time, the trainees attended formal classes and physical training during the day and were free to spend the rest of their time studying or in personal pursuits. The Administrator opined that:

> Section 553.7 of regulations 29 C.F.R. § 553 ... specifically addresses the circumstances when they involve fire protection or law enforcement employees. As explained in this section of the regulations, only the time which an employee spends in actual training or re-training at a bona fide fire or police academy constitutes compensable hours of work under FLSA. For example, a trainee police officer at the police academy takes part in some form of required physical training in the morning from 7:00 a.m. until 7:45 a.m. The trainee then attends classes from 8:00 a.m. until 4:30 p.m., with 1/2 hour free for lunch (12:00 p.m.—12:30 p.m.). After supper (4:30 p.m. to 5:30 p.m.), this individual returns to the classroom in order to attend a required lecture from 5:30 p.m. until 6:00 p.m. The trainee spends the rest of the day in studying or in other personal pursuits. The trainee in this example has performed 9 1/2 hours of work for the purpose of applying FLSA. The fact that

the trainee police officers must remain at the police academy's facilities, or in their barracks on the premises, even after their classes have been completed for the day would not make such time compensable as hours worked. This is explained in Section 553.14(a) of Part 553.

In the instant case, the Court cannot say that Plaintiffs were not free to use their non-class and non-training time for personal pursuits. Plaintiffs admit that while at their apartments, cadets were free to watch television, talk on the telephone, read, or engage in any other desired endeavor. As Springfield Police Sergeant William Pittman stated, once the cadets returned to their apartments "they had several options. They had a lot of freedom there. They were allowed to bring televisions, computers, stereos, all this stuff to the academy."

Furthermore, after the initial week of training, Plaintiffs were generally granted liberty to leave their apartments. At that time they were free to go to a movie, a bar, home, shopping, or virtually anywhere else they desired to go. Finally, although cadets were subject to bed checks and the apartments were subject to room inspections, few, if any, were ever performed.

Moreover, the Court finds that Plaintiffs' interpretation of "free to use such time for personal pursuits" is too narrow. Plaintiffs were never subject to being called for training or to attend a class once they had returned to their apartments, nor were they on-call. Accordingly, the Court finds that Plaintiffs' non-class and non-training time was free for personal pursuit, and therefore, it is not compensable.

Although there are no cases directly on point, analogous case law establishes that Plaintiffs are not entitled to be compensated for non-class and non-training time. The Seventh Circuit has adopted the *Lamon* test when analyzing whether a police officer's meal time is compensable under the FLSA. The *Lamon* test states that "a law enforcement employee is completely relieved from

---

**4.** Although not binding upon the Court, the regulations and interpretations of the Department and the Administrator are entitled to substantial deference. *Atkins v. General Motors Corp.,* 701 F.2d 1124, 1128 (5th Cir.1983).

duty during a meal period 'when the employee's time is not spent predominantly for the benefit of the employer.'" *Alexander v. City of Chicago,* 994 F.2d 333, 337 (7th Cir.1993) quoting *Lamon v. City of Shawnee,* 972 F.2d 1145, 1155 (10th Cir.1992); *see also Barefield,* 81 F.3d at 710.

In the present case, the Court fails to see how the time available to Plaintiffs in which they were free to watch television, study, or read is time spent predominately for the benefit of the City. While it may be true that the resident program produces better law enforcement officers and, therefore, benefits the City, the Court cannot say that just because Plaintiffs are required to reside at the situs of the training program that all time spent there becomes time spent predominately for the benefit of the City.

Common sense reveals that Plaintiffs should not be compensated for the time which they spent sleeping.[5] This fact is accentuated because no Plaintiff was ever subject to be called upon to perform any act which would benefit the City during normal sleeping hours. If meal times are not compensable based upon a lack of benefit to the employer, the Court fails to see how Plaintiffs' time in the present case would be compensable. Accordingly, the Court finds that Plaintiffs' non-class and non-training time was free for personal pursuit, and therefore, it is not compensable.

### B. *Whether Plaintiffs' comp time was properly credited*

■ Because the Court has found that Plaintiffs are not entitled to compensation for non-class and non-training time, the next issue it must address is whether the comp time which Plaintiffs received was properly calculated and credited to them. Plaintiffs argue that although they earned overtime payments as early as the first week of the training program, that overtime was withheld by the City for nearly five months. Plaintiffs also argue that their FLSA overtime was

illegally withheld until after the completion of their training at the academy. Thus, Plaintiffs argue that the City has violated the FLSA.

As the City notes, there is a difference between contractual overtime and FLSA overtime. The collective bargaining agreement between the City and the police union allows police officers to be paid contractual overtime for all hours worked in excess of 8 1/2 hours per day. On the other hand, FLSA overtime cannot be calculated until the end of the 28 day FLSA time period. 29 U.S.C. § 207(k). As stated above, FLSA overtime is due only for those hours worked in excess of 171 hours during a 28 day FLSA time period. *Id.; see* Wage–Hour Administrator opinion letter 1644, March 26, 1986. Accordingly, it would be impossible for Plaintiffs to earn FLSA overtime during their first week of training as Plaintiffs claim because there is no way for Plaintiffs to work 171 hours in one week (there is no way to cram more than 168 hours into a week, at least in this life—7 × 24 still equals 168).

Furthermore, the City has demonstrated that Plaintiffs were actually overcompensated rather than undercompensated. The City has shown that Plaintiffs were paid for the times which they spent at meals and on breaks even though the City was not required to compensate Plaintiffs for that time. In addition, if a class lasted only 40 or 50 minutes, Plaintiffs credited themselves and were paid for the full hour's worth of time. Finally, the City has demonstrated that all hours worked by Plaintiffs in excess of 171 hours during a 28 day FLSA time period were multiplied by 1.5 and credited to that Plaintiff's individual comp bank as required by 29 U.S.C. § 207(a). The City used Plaintiffs' time sheets not only to insure that the minimum 400 training hours were reached but to insure that each Plaintiff was properly credited with all the FLSA overtime due to him. These time sheets have been presented to the Court, and the Court is satisfied that

---

**5.** *See Ariens v. Olin Mathieson Chemical Corp.,* 382 F.2d 192 (6th Cir.1967) holding that firefighters are not entitled to overtime compensation for on-call sleep time; *see also Bodie v. City of Columbia,* 934 F.2d 561 (4th Cir.1991) (en

banc) holding that an FLSA claim by firefighters for on-call sleep time was properly dismissed by the district court based upon a lack of a contemporaneous objection which constituted an implied agreement not to be paid for sleep time.

all of the FLSA overtime due to Plaintiffs was properly credited to them.

▪ Plaintiffs also argue that the City violated the FLSA by withholding for nearly five months the use of the comp time which they had earned. Initially, the Court notes that nowhere have Plaintiffs alleged that they asked to use their comp time but were denied by the City. Moreover, 29 U.S.C. § 207(*o*)(5) and 29 C.F.R. § 553.25(a) state that an employee "shall be permitted to use such time off within a reasonable period after making the request, if such use does not unduly disrupt the operations of the agency." In the instant case, it would be unduly disruptive of the training course to allow Plaintiffs to use their comp time before the ten week training programs were completed. If a cadet were allowed to use his comp time while at the academy, not only might he miss information relevant to his job, but he may also fall short of the 400 minimum training hours required to be certified.

▪ Finally, the City's policy of making cash payments for accrued compensatory time in excess of 125 hours does not violate the FLSA. 29 U.S.C. § 207(*o*)(3)(A). The City has demonstrated that the comp time earned in excess of 125 hours by cadets and police officers was paid by the City forthwith.[6] For example, Plaintiff Doyle earned 284.5 hours of comp time for the quarter ending June 30, 1995. Accordingly, the City paid Plaintiff Doyle a cash payment representing 159.5 hours of comp time and reduced his comp bank hours to 125 hours. The City's practice complies with the dictates of both the FLSA and the U.S. Department of Labor's regulations.

Accordingly, the Court finds that the comp time earned by Plaintiffs was properly calculated and credited to Plaintiffs. Plaintiffs were fully and properly compensated through a combination of wages and compensatory time in excess of the applicable wages owed to them under the FLSA. Furthermore, the Court finds that the City did not violate the FLSA by not calculating and

crediting the amount of FLSA overtime earned by Plaintiffs until after the completion of their training at the academy, nor did the City withhold overtime pay from Plaintiffs as they attended the academy.

### C. *Whether Plaintiffs were forced to take comp time*

▪ Plaintiffs argue that they were forced to accept comp time in lieu of overtime payments in violation of the FLSA. Furthermore, Plaintiffs assert that the City violated the FLSA in that Plaintiffs were not given a choice regarding the use of their comp time which they earned while at the academy. Rather, Plaintiffs allege that they were required to take one week of comp time upon completion of their training at the academy.

Title 29 U.S.C. § 207(*o*)(1) states that "[e]mployees of a public agency ... may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section." This section allows the City to do exactly what it did, *i.e.* compensate Plaintiffs' overtime through comp time instead of through cash payments. Plaintiffs clearly had discretion regarding the form of their FLSA overtime payment. For example, a cadet in a class subsequent to Plaintiffs' classes requested a cash payment in lieu of comp time, and he received it. In addition, Michael Wygal, a Budget Analyst for the city of Springfield, stated that the language of the collective bargaining agreement was clear: "[O]vertime was to be paid in cash or comp time at the officer's option and if individuals in the class wanted to be paid in cash, that was fine."

However, no Plaintiff requested such a cash payment, and therefore, they are estopped from complaining about their decision now. Accordingly, the Court finds that the City did not violate the FLSA by awarding

---

**6.** One hundred twenty five hours is the maximum possible comp time hours which may be accumulated by a police officer or cadet.

Plaintiffs comp time in lieu of cash payments.[7]

■ Plaintiffs were also given a choice as to when to use their comp time. However, the Court again notes that nowhere have Plaintiffs alleged that they did not wish to take a week off following the academy. To the contrary, as Sergeant Pittman's deposition testimony demonstrates, the City gave Plaintiffs a choice:

> Q. This indicates that this particular officer, this is Officer Berberet. Who have certain days on and certain days off.
>
> A. Right.
>
> Q. And would he also be instructed to use personal days or some days off?
>
> A. Well, I'm not sure if that's an instruction that he will use them or if that is just acknowledgment of that week they decided to take off.
>
> Q. You think the class voted?
>
> A. I know they did.
>
> Q. To take off for that week?
>
> A. They did.

The FLSA requires that comp time be used within a reasonable time after a request. The week subsequent to the completion of basic training was the first reasonable time in which Plaintiffs could use their comp time without unduly interrupting their basic training. 29 U.S.C. § 207(o)(5) and 29 C.F.R. § 553.25(a). No Plaintiff ever asked to use his comp time prior to the completion of training, and Plaintiffs cannot complain about their choice now. Accordingly, the Court finds that the City did not force Plaintiffs to use their comp time during the week subsequent to the completion of their training at the academy rather than allowing Plaintiffs to choose when to use their comp time. Thus, the City has not violated the FLSA.

### D. *Defendant's affirmative defenses*

Because the Court has found (1) that Plaintiffs are not entitled to compensation for non-class and non-training time, (2) that the City properly credited all comp time owed to Plaintiffs, (3) that Plaintiffs were not forced to take their comp time during the week subsequent to the completion of their training at the academy, and (4) that the City has not violated any provision of the FLSA, the Court need not address the City's affirmative defenses.

## IV. CONCLUSION

*Ergo,* Plaintiffs' Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is ALLOWED.

Accordingly, summary judgment is hereby entered in favor of Defendant and against all Plaintiffs.

Case Closed.

### *APPENDIX A*

*Class Number 93–16*

January 10, 1993 – January 16, 1993
January 17, 1993 – February 13, 1993
February 14, 1993 – March 13, 1993
March 14, 1993 – March 19, 1993

*Class Number 93–18*

July 11, 1993 – July 31, 1993
August 1, 1993 – August 28, 1993
August 29, 1993 – September 17, 1993

*Class Number 94–21*

April 10, 1994 – May 7, 1994
May 8, 1994 – June 4, 1994
June 5, 1994 – June 17, 1994

*Class Number 94–23*

October 9, 1994 – October 22, 1994
October 23, 1994 – November 19, 1994
November 20, 1994 – December 17, 1994

---

**7.** The Court has previously found that all compensation amounts owed to Plaintiffs were properly calculated and credited to Plaintiffs.

*Class Number 95–24*
January 8, 1995 – January 14, 1995
January 15, 1995 – February 11, 1995
February 12, 1995 – March 11, 1995
March 12, 1995 – March 17, 1995

*Class Number 400–52*

March 12, 1995 – April 8, 1995
April 9, 1995 – May 6, 1995
May 7, 1995 – May 19, 1995

## APPENDIX B

| PLAINTIFF | WAGES PAID | HOURS OF COMP TIME | AMOUNT OF COMP TIME |
|---|---|---|---|
| William Anders | $4988.38 | 218.25 | $2628.19 |
| Brian Hayes | $4988.38 | 237.00 | $2853.98 |
| Walter Meek | $4988.38 | 237.00 | $2853.98 |
| Donald Anderson | $4988.38 | 237.00 | $2853.98 |
| Michael Nevill | $4988.38 | 196.00 | $2360.25 |
| Terry Schou | $5117.85 | 189.00 | $2275.96 |
| Frank Rotherham | $5296.99 | 205.00 | $2555.02 |
| Barry Ritter | $5296.99 | 205.00 | $2555.02 |
| Scott Rosenberger | $5296.99 | 205.00 | $2555.02 |
| Wendell Banks | $5296.99 | 183.75 | $2290.17 |
| David Berberet | $5296.99 | 183.75 | $2290.17 |
| James Cordery | $5296.99 | 183.75 | $2290.17 |
| Carl Crawford | $5296.99 | 183.75 | $2290.17 |
| Robert Davidsmeyer | $5296.99 | 183.75 | $2290.17 |
| Matthew Fricke | $5296.99 | 183.75 | $2290.17 |
| Noll Handlin | $5296.99 | 183.75 | $2290.17 |
| Jeff Leininger | $5296.99 | 183.75 | $2290.17 |
| Richard Whitlock | $5296.99 | 183.75 | $2290.17 |
| David Urbas | $5296.99 | 172.50 | $2149.95 |
| Matthew Madonia | $5296.99 | 180.75 | $2252.78 |
| Donald Edwards | $5296.99 | 188.25 | $2346.25 |
| Ken Winslow | $5935.02 | 198.00 | $2554.14 |
| Ernest Lintner | $6275.25 | 234.75 | $3028.20 |
| John Doyle | $7933.32 | 292.25 | $3769.94 |
| Kerry Miller | $7933.32 | 292.25 | $3769.94 |
| John Fickas | $7933.32 | 292.25 | $3769.94 |